## UNITED STATES DISTRICT COURT

### FOR THE EASTERN DISTRICT OF TEXAS

### SHERMAN DIVISION

| | | |
|---|---|---|
| STEVEN SIMON | § | |
| *Plaintiff* | § | |
| | § | CIVIL ACTION NO. |
| | § | |
| *vs.* | § | |
| | § | JURY TRIAL REQUESTED |
| | § | |
| FORD MOTOR COMPANY, GLENN | § | |
| POLK AUTOPLEX, INC. AND FORD | § | |
| MOTOR CREDIT COMPANY, LLC | § | |
| | § | |
| *Defendant* | § | |

## COMPLAINT

### I.   Parties

1.      Plaintiff, Steven Simon, is an individual of the lawful age of majority and citizen of the State of Oklahoma.

2.      Defendant, Ford Motor Company, hereinafter "Ford," is headquartered in Michigan. Ford conducts business in this District and is responsible for the manufacture, distribution, and sale of all Ford automobiles in the United States, as well as engineering design, development, research and development, and manufacturing activities in the U.S., Canada, and Mexico.  Ford may be served with process through its registered agent for service of process, CT Corporation System, at 350 N. St. Paul Street, Dallas, Texas 75201.

3.      Defendant, Glenn Polk AutoPlex, Inc.,  hereinafter "Glenn Polk," is headquartered

in Texas.   Glenn Polk conducts business in this district and is responsible for the sale and distribution of Ford automobiles in the United States. Glenn Polk may be served with process through its registered agent for service of process, Glenn Polk, 4320 North I-35, Gainesville, TX 76241-0677.

4.      Defendant, Ford Motor Credit Company, LLC., hereinafter "Ford Credit," or "Lender," is headquartered in Texas.  Ford Credit conducts business in this district and is responsible for the financing of Ford automobiles in the United States.  Ford Credit may be served with process through its registered agent for service of process, CT Corporation System, 1999 Bryan St. Ste. 900, Dallas, TX 75201-3136.

## II.    Jurisdiction

5.      This Court has federal question jurisdiction over the lawsuit under the Magnuson-Moss Warranty Act pursuant to 15 USC § 2310(d); and 28 USC § 1331 in that the disputes involve predominant issues of federal law.  Declaratory relief is available pursuant to 28 USC §§ 2201 and 2202. The court has supplemental jurisdiction under 28 USC § 1367 over Plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

## III.    Venue

6.      Venue is proper in this district under 28 U.S.C. §1391(a)(3) because the Defendant is subject to personal jurisdiction in this district and there is no other district where the suit may be brought.

## IV.    Conditions Precedent

7.      All conditions precedents have been performed or have occurred.

-2-

## V.   Facts

### A.   The Transaction

8.     On or about August 29, 2007, Plaintiff purchased a new 2008 Ford F-450 VIN 1FTXW43R38EB89837 (hereinafter referred to as the "F-450" or the "vehicle") from Glenn Polk. The F-450 was purchased primarily for Plaintiff's personal use.  The sales contract was presented to Plaintiff at the dealership and was executed at the dealership.  At all times during the transaction the dealership personnel held themselves out to be acting on behalf of Ford, as well as Glenn Polk.

9.     The sales price of the F-450 was $51,675.00, excluding finance charges.  Plaintiff made a deposit of $9,374.20.

10.     The contract of sale was assigned to Defendant, Ford Credit. The contract which was assigned contained the following provision:

> "Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof. Recovery hereunder by the debtor shall not exceed amounts paid by the Debtor hereunder."

### B.   Implied Warranties

11.     As a result of the sale of the F-450 by Defendant, Glenn Polk, an implied warranty of merchantability arose in the transaction which included the guarantee that the F-450 would pass without objection in the trade under the contract description; and that the F-450 was fit for the ordinary purpose for which such a F-450 is purchased.

12.     Subsequent to the sale, an implied warranty arose in connection with the repairs performed by Defendants, Ford and Glenn Polk.  Specifically, Defendants, Ford and Glenn Polk, impliedly warranted that the repair work had been performed in a good and workmanlike manner.

-3-

### C.   Express Warranties

13.   In addition to the implied warranties that arose in the transaction, certain representations and express warranties were made, including, that any malfunction in the F-450 occurring during a specified warranty period resulting from defects in material or workmanship would be repaired, and that repair work on the F-450 had, in fact, repaired the defects.

14.   Plaintiff's purchase of the F-450 was accompanied by express warranties offered by Defendant, Ford, and extending to Plaintiff.  These warranties were part of the basis of the bargain of Plaintiff's contract for purchase of the F-450.

15.   The basic warranty covered any repairs or replacements needed during the warranty period due to defects in factory materials or workmanship.  Any required adjustments would also be made during the basic coverage period.  The basic coverage period was 3 years or 36,000 miles, whichever came first.  The vehicle's power train was covered for a period of five years or 60,000 miles, whichever came first.  All warranty repairs and adjustments, including parts and labor, were to be made at no charge.  Additional warranties were set forth in the warranty booklet and the 2013 F-450 owners manual.

### D.   Actionable Conduct

16.   In fact, when delivered, the F-450 was defective in materials and workmanship, such defects being discovered within the warranty periods.  Within the first few days after purchase and prior to 1,000 miles of use, Plaintiff began experiencing defective conditions with the F-450.  Many defective conditions have occurred since purchase, including, but not limited to:

      (1)    Oil leaks;

      (2)    Manifold;

  (3)  Main seal leak;

  (4)  Coolant leaks;

  (5)  Defective engine light;

  (6)  Intake Lifter;

  (7)  Engine problems;

  (8)  Electrical problems;

  (9)  Fan Clutch; and

  (10)  Malfunctioning sensor.

  17.  Since purchase, Plaintiff has returned the F-450 to Defendant, Glenn Polk, for repairs on numerous occasions. During the first year and 12,000 miles following purchase, the vehicle was in for repairs at least 7 times. In all, the F-450 has been to authorized dealers for repair attempts at least 7 times for a total of more than 35 days. Despite this prolonged period during which defendants were given the opportunity to repair the F-450, the more significant and dangerous conditions were not repaired. Defendants failed to repair the vehicle so as to bring it into conformity with the warranties set forth herein.

  18.  The defects experienced by Plaintiff with the F-450 substantially impaired its use, value and safety. Despite Plaintiff's repeated efforts to allow Defendants the opportunity to repair the F-450, many nonconforming and defective conditions were never repaired. From the date of its purchase, the F-450 continues to this day to exhibit some or all of the nonconformities described herein.

  19.  Plaintiff directly notified Defendants and each of them of the defective conditions of the F-450 on numerous occasions. Plaintiff notified Defendants that he desired a buy-back of the

F-450 but Defendants have failed and refused to buy back Plaintiff's defective F-450.

**Count 1:  Violations of the Texas Deceptive Trade Practices Act**

20.     Plaintiff realleges and incorporate by reference herein each and every allegation set forth in the preceding paragraphs.

21.     Plaintiff is a "consumer" as defined in the DTPA.

22.     Defendants violated the following provisions of the DTPA:

a.      §17.50(1): the use or employment of a false, misleading, or deceptive acts or practices as defined in §17.46(b)(5), §17.46(b)(6), §17.46(b)(7), §17.46(b)(9), §17.46(b)(12), §17.46(b)(13), §17.46(b)(20), §17.46(b)(22) and §17.46(b)(24) of the DTPA that were detrimentally relied upon by Plaintiffs;

b.      §17.50(2): breach of express warranty, as defined in §2.313 of the Tex Bus and Com Code (the warranty failed of its essential purpose and Plaintiff was deprived of substantial value of bargain because the defect was not corrected within reasonable time);

c.      §17.50(2): breach of the implied warranty to perform repairs in a good and workmanlike manner, as set forth in Melody Home Mfg. Co. v. Barnes, 741 S.W.2d 349, 354 (Tex. 1987);

d.      §17.50(2): breach of the implied warranty of merchantability as defined in §2.314 of the Texas Business and Commerce Code;

e.      §17.50(3): an unconscionable action or course of action as defined by §17.45(5).

23.     Because of the inherent defects in the F-450, which defects existed at the time the automobile was sold although not discovered until later, the automobile was not merchantable in that it would not pass without objection in the trade under the contract description and it was not fit for the ordinary purpose for which such automobiles are used.  Furthermore, Defendants, Ford and

-6-

Glenn Polk, failed to perform the repair work in a good and workmanlike manner.  This conduct by Defendants, Ford and Glenn Polk, constitute a breach of the implied warranties described above, which breach is actionable under DTPA § 17.50(a)(2).

24.     When the automobile was not repaired, the express warranties that it would be and had been repaired were breached. Defendant, Ford's breach of the express warranties is actionable under DTPA § 17.50(a)(2).

25.     Defendants', Ford and Glenn Polk, statements that the F-450's defects would be and had been repaired misrepresented the characteristics, uses, benefits, standard and quality of defendant's services.  For this reason, these representations were false, misleading and deceptive as defined in DTPA § 17.46(b)(5) and (7); and this conduct is actionable under DTPA § 17.50(a)(1).

26.     There was a gross disparity between the amount of money paid by Plaintiff for the F-450 and the value received by Plaintiff.  For this reason, this transaction was unconscionable and is actionable under DTPA § 17.50(a)(3).

27.     Plaintiff further contends that Defendants' violations of the DTPA were committed knowingly and intentionally as those terms are defined in §17.45(9) and §17.45(13) of the DTPA entitling Plaintiff to seek civil penalties in trebling of his actual damages in accordance with the DTPA.

28.     This conduct was a producing and/or proximate cause of actual damages to Plaintiff, as set forth below.

29.     The limited remedy in Defendants' warranty fails of its essential purpose and deprives Plaintiffs of the substantial value of the bargain because Defendants or its authorized dealerships did not correct the defects within a reasonable time.  Tex. Bus. and Com. Code § 2.719.  Therefore, any

purported limitation of remedies is ineffective.

30.     The exclusion of consequential and incidental damages is unconscionable and therefore unenforceable.

31.     This conduct was a producing and/or proximate cause of actual damages to Plaintiffs, as set forth below.

32.     As a direct and proximate result of Defendants' willful violation of their obligations under the DTPA, Plaintiff has suffered actual, consequential and incidental damages, including but not limited to money expended on the purchase of the F-450, damages associated with the inconvenience suffered as a result of the complete failure of the F-450 to operate properly, the loss of use of the F-450 during the weeks it has been in the garage for repairs, the cost of repairs related to these defects, loss of wages, and attorneys' fees.   Plaintiff have incurred and will continue to incur in order to protect his rights in this matter.  The precise amount of damages is unknown at the present time but is estimated to be in excess of $50,000 and will be shown according to proof at trial. Attorneys' fees, loss of use, interest, and other damages continue to accrue.

33.     Under the DTPA, Plaintiff is entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorney's fees, if Plaintiff prevails.  As a proximate result of Defendants' misconduct as alleged herein, and in an effort to protect his rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiff to employ the legal services of Richard C. Dalton.  Plaintiff has incurred and continue to incur legal fees, costs and expenses in connection therewith.

**Count 2: Lender Liability**

34.     Plaintiff realleges and incorporate by reference herein each and every allegation set

forth in the preceding paragraphs.

35.     Plaintiff is indebted to Lender as a result of his purchase of the F-450.  Plaintiff is entitled to assert all claims and defenses stated above against Lender as a defense to the debt.

### Count 3:  Violation of the Magnuson-Moss Warranty Act

25.     Plaintiff realleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

26.     Plaintiff is a "consumer" as defined in the Magnuson-Moss Warranty Act (hereinafter "Warranty Act"), 15 U.S.C. § 2301(3).

27.     Defendants Ford and Glenn Polk are "suppliers" and "warrantors" as defined in the Warranty Act, 15 U.S.C. § 2310(4) and (5).

28.     The F-450 hereinabove described is a "consumer product" as defined in the Warranty Act, 15 U.S.C. § 2301(1), because it is normally used for personal purposes and Plaintiff in fact purchased it wholly or primarily for personal use.

29.     The express warranties more fully described hereinabove pertaining to the F-450 is a "written warranty" as defined in the Warranty Act, 15 U.S.C. § 2301(6).

30.     The actions of Defendants and each of them as hereinabove described, in failing to tender the F-450 to Plaintiff free of defects and refusing to repair or replace the defective F-450 tendered to Plaintiff constitute a breach of the written and implied warranties covering the F-450 and hence a violation of the Magnuson-Moss Warranty Act.

31.     Plaintiff has performed all things agreed to and required of them under the purchase agreement and warranty, except as may have been excused or prevented by the conduct of Defendants as herein alleged.

32.     As a direct and proximate result of the acts and omissions of Defendants and each of them as set forth hereinabove, Plaintiff have been damaged hereinabove in an amount in excess of $50,000.00 according to proof at trial.

33.     Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(2), Plaintiff is entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended.  As a proximate result of the misconduct of Defendants as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiff to employ the legal services of Richard C. Dalton.  Plaintiff has incurred and continue to incur legal fees, costs and expenses in connection therewith.

## Count 4:  Negligent Repair

34.     Plaintiff realleges and incorporates herein by reference each and every allegation set forth in the preceding paragraphs.  For purposes of this cause of action, the word  "Defendants" refers to Ford and Glenn Polk.

35.     On numerous occasions between October, 2007 and May 2014, Plaintiff delivered the F-450 to Ford and Glenn Polk for repairs of the defective conditions covered under the express and implied warranties set forth hereinabove.

36.     On each occasion that Plaintiff returned the F-450 for repairs, Plaintiff is informed and believe, and thereupon allege, that Defendants, Ford and Glenn Polk,  attempted repairs of the F-450 pursuant to their obligations under the express and implied warranties. Defendants owed a duty of care to Plaintiff to perform repairs on the F-450 in a good and workmanlike manner within a reasonable time.  These Defendants breached this duty.

-10-

37.     Defendants' attempted repairs of Plaintiff F-450 were done so negligently, carelessly, and recklessly as to substantially impair the F-450's use, value, and safety in its operation and use. At no repair attempt was Plaintiff F-450 fully and completely repaired by Defendants, nor were many of the conditions of which Plaintiff complained fixed or significantly improved by Defendants' attempts at repair.  Nonetheless, each time Plaintiff picked up the vehicle after Defendants' repair attempts, Defendants represented to Plaintiff that the repairs were complete, and Plaintiff relied thereon.

38.     As a direct and proximate result of defendant's negligent failure to repair the F-450 within a reasonable time or within a reasonable number of attempts, Plaintiff was forced to drive a defective and dangerous F-450 in conducting their daily activities.  As a further direct and proximate result of Defendants' failure to repair the F-450 in a timely and workmanlike fashion, Plaintiff were forced repeatedly to take the F-450 in for further repair attempts and to leave the F-450 for long periods of time at great inconvenience to themselves, and Plaintiff sustained actual damages.

39.     The damages Plaintiff has suffered as a direct and proximate result of Defendants' negligence exceed $50,000. These include but are not limited to costs of repair, expenses associated with returning the F-450 for repeated repair attempts to Defendants, loss of wages, loss of use, and damages to Plaintiff' health and well-being in the form of emotional distress.

## VI.   Damages

40.     The conduct described above has been and is a producing and proximate cause of damages to plaintiff.

41.     Plaintiff's damages include the reasonable and necessary cost to repair the automobile, and damages for its loss of use for the time that the automobile has been unrepaired and, therefore,

-11-

unusable; in the alternative, plaintiff seeks the diminished or lost value of the automobile due to its defective condition.

42.     The amount of plaintiff's damages exceeds the minimum $50,000.00 jurisdictional limits of the court.

### VII.     Request for Rescission

43.     Plaintiff seeks a damages remedy as an alternative to the remedy of rescission which is requested in the following paragraph.

44.     Plaintiff revokes his acceptance of the F-450 for the reason that its defects substantially impair its value to Plaintiff and acceptance was based on Plaintiff's reasonable reliance on the false representations and warranties of Defendants that the defects in the F-450 would be repaired. Accordingly, Plaintiff seeks a cancellation of the automobile purchase transaction and an order of the court restoring to him the money obtained by Defendants as a result of the false representations and breaches of warranty set forth above. Plaintiff also seeks cancellation of the debt and now offers to return the automobile to defendants. In this connection, Plaintiff also offers to credit defendant with the fair rental value of the automobile for the number of miles it was actually driven, calculated at the rate an automobile in similar condition would have rented for during the time period in question.

### VIII.     Additional Damages and Punitive Damages

45.     Defendants' conduct in violation of the DTPA was committed knowingly, as that term is defined. Accordingly, Plaintiff seeks an award of additional damages under the DTPA in an amount not to exceed three times the amount of his economic damages.

### IX.   Attorney Fees and Costs

46.     Plaintiff is entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended.  As a proximate result of the misconduct of Defendants as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiff to employ the legal services of Richard C. Dalton.  Plaintiff has incurred and continue to incur legal fees, costs and expenses in connection therewith.

### X.   Prayer

47.     For these reasons, Plaintiff prays for judgment against the Defendants for the following:

    a.    For general, special and actual damages according to proof at trial;

    b.    Rescinding the sale of the 2008 Ford F-450 VIN 1FTXW43R38EB89837 , and returning to Plaintiffs the purchase price including all collateral costs at the time of the sale, any and all finance charges, insurance premiums, maintenance costs, repair costs, and damages;

    c.    For incidental and consequential damages according to proof at trial;

    d.    Out of pocket damages for expenditures related to any cost of repairs, deductibles; and towing charges.

    e.    Any diminution in value of the F-450 attributable to the defects;

    f.    Past and future economic losses;

    g.    Prejudgment and post-judgment interest;

    h.    Attorney fees;

    i.    Civil Penalties and/or Punitive damages;

    j.    Costs of suit, expert fees and litigation expenses; and

k      All other relief this Honorable Court deems appropriate.

## XI.   Demand for Jury Trial

48.   Plaintiff hereby demands trial by jury to the extent authorized by law.

Respectfully submitted:

By: _____

Richard C. Dalton
TX. Bar No. 24033539
1343 West Causeway Approach
Mandeville, Louisiana 70471
E-mail: rdalton746@aol.com
Tel. (985) 778-2215
Fax: (985) 778-2233

Attorney for the Plaintiff